609 S.E.2d 597

**Brenda JONES, Appellant,**

v.

**Lake W. DALEY, Respondent.**

**No. 3951.**

Court of Appeals of South Carolina.

Heard Jan. 11, 2005.

Decided Feb. 22, 2005.

312

David S. Mathews, of Ridgeland, for appellant.

R. Thayer Rivers, of Ridgeland, for respondent.

WILLIAMS, J.:

Brenda Jones appeals a special referee's decision that her use of Lake Daley's property for ingress and egress to her own property did not create an easement by prescription. We reverse and remand.

## FACTS

In 1939, Thomas Washington acquired title to fifty acres of property in Jasper County. This property was divided and sold to unrelated parties in 1963, except for a five-acre parcel Thomas gave to his daughter, Jamie Washington. Ms. Washington granted her niece, Brenda Jones, a one-half interest in this parcel in 1982. In 1993, Jones was granted the remaining half interest, giving her full title to the five-acre property ("the Jones Parcel").

Throughout the Washington family's ownership of the Jones Parcel and the larger fifty-acre tract, the only access to the property was by use of a trail that followed the northern and eastern boundary of a two hundred acre parcel ("the Daley Parcel") situated between it and the nearest public road. This trail, the use of which is at issue in this case, followed the Daley Parcel's outer borders, but was situated entirely within the parcel's boundaries. Union Camp owned the Daley Parcel until 1987, when it was sold to Delta Plantation. In the late 1990s, Lake Daley purchased the two hundred acres from Delta Plantation.

Jones's three uncles, who worked the Jones Parcel with their father, original owner Thomas Washington, all testified the family actively farmed the property from at least the early 1950s until 1959. At some point in the early 1950s, Union Camp plowed the preexisting access trail for the purpose of creating a firebreak. Following Union Camp's plowing, the Washingtons worked the plowed path with shovels, leveling out the newly cleared trail to make the path more suitable for ingress and egress to their property. Union Camp periodically plowed the firebreak, and each time the Washingtons reworked the trail to smooth it down for better travel. The Washingtons never requested permission to use the trail because they believed, since the trail was the only access to their property, they had a valid legal right to maintain and use it for ingress and egress. Union Camp, the Daley Parcel's owner for most of the time period at issue, was aware of the Washingtons' use and maintenance of the trail and fully condoned it for over thirty-five years.

Because the Washingtons ceased farming the Jones Parcel around 1959, their use of the trail became less frequent in the decades that followed. They did, however, continue to periodically visit the property and maintain the trail following Union Camp's plowing. A nearby resident since the 1960s testified that the trail's use to reach "buried" property was common community knowledge. Jones, age 46, testified the trail was used by her family to access the parcel "as far back as [she] remembered," and she specifically recalls using the access herself since the 70s or 80s. Because Jones is not a South Carolina resident, however, her visits to the property, though many, were sporadic.

In the mid–1990s, Delta Plantation, then owner of the Daley Parcel, decided to close a road used by several other "buried" landowners that crossed directly over the two hundred acre property. To satisfy landowners who possessed recorded easements over the closed road, the access trail used by the Washington family was expanded into a full-sized road. An employee for Delta Plantation, who worked on the trail expansion, testified as to the state of the trail when they decided to build the new road. He stated he had maintained and expanded the firebreak since the beginning of his employment in 1987. Nevertheless, when asked if the new road was built

over an existing road, he stated, "No ... there was a fireline, but just barely." He testified that by the mid–90s the trail was nothing more than a "deer trail." The employee conceded, however, that the path was about eight feet wide in places and would be traversable by a small tractor.

Following the trail's expansion into a fully accessible road, all landowners with recorded easements over the closed road were granted written easements over the newly created one. Because Jones did not have a recorded easement to use the closed road, she was not granted a written easement to use the road built over her parcel's only access.[1] Despite a survey her uncle commissioned in 1989 of the Jones Parcel which recommended a written easement be obtained from Daley, Jones maintained the belief that she had a right to use the newly created road.

In 2001, Jones attempted to haul timber from her parcel over the Daley Parcel's road. Daley objected to this activity. In 2002, Jones brought an action against Daley to declare an easement by prescription for ingress and egress over the road. The appointed special referee found no easement by prescription was created by Jones and her predecessors' prior use. This appeal followed.

## STANDARD OF REVIEW

Establishing the existence of an easement is a question of fact in a law action. *Jowers v. Hornsby*, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987); *Hartley v. John Wesley United Methodist Church of Johns Island*, 355 S.C. 145, 148, 584 S.E.2d 386, 387 (Ct.App.2003). The present matter was consensually referred to a special referee. Accordingly, our scope of review is limited to the correction of errors of law, and we will not disturb the referee's factual findings that have some evidentiary support. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85–86, 221 S.E.2d 773, 775 (1976); *Hartley*, 355 S.C. at 148, 584 S.E.2d at 387.

---

1. The road closed by Delta Plantation in the mid–1990s did not connect to the Jones Parcel.

## LAW/ANALYSIS

As a preliminary matter, we address Daley's assertions that the issues Jones raises on appeal are not preserved for our review. It is Daley's position that because Jones pled she "owns a right to use the easement of ingress and egress by prescription for continuous open hostile and adverse possession," she may not now assert a prescriptive easement under a claim of right on appeal. We disagree.

■ "It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review." *Staubes v. City of Folly Beach,* 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000). In the present case, the special referee opened trial by stating to the parties and their lawyers there would not be opening or closing arguments in the case. Instead, the referee stated he would give both parties "ten days to submit me a letter in the way of a closing argument summarizing what they think that their witnesses said and what their position is as to what the ruling ... that I make should be." Jones, unlike Daley, availed herself of this opportunity, clearly and cogently raising Jones' satisfaction of the claim of right element to establishing the easement by prescription. The special referee, after ten months of consideration, addressed the claim of right issue in his final order, but dismissed Jones's arguments, finding no easement was established. Because these issues were raised to and ruled upon by the special referee, we conclude they are preserved for our review. Having addressed the issues' preservation for appellate review, we move now to the merits of the referee's legal conclusions.

## I. The Requisite Elements of Establishing a Prescriptive Easement

Jones argues the referee erred in concluding a prescriptive easement can only be established by use that is both adverse *and* under a claim of right. We agree.

Relying on the case of *Nelums v. Cousins,* 304 S.C. 306, 308, 403 S.E.2d 681, 682 (Ct.App.1991), the referee incorrectly stated the elements of establishing a prescriptive easement as twenty years of use which is "adverse, exclusive, continuous,

and uninterrupted and occurred under claim of right and with the knowledge or acquiescence of [the] owner of [the] servient estate or predecessors in title." Applying these elements, he concluded Jones failed to establish an easement because "there is no exclusive use of the premises nor was the use by the Plaintiff's predecessors in title hostile or adverse to that of the owner of the property in question."

Since *Nelums*, South Carolina courts have simplified the elements of establishing a prescriptive easement. In order to establish an easement by prescription, a party must only show: (1) the continued and uninterrupted use or enjoyment of a right for a full period of twenty years; (2) the identity of the thing enjoyed; and (3) that the use or enjoyment was adverse *or* under a claim of right. *Horry County v. Laychur*, 315 S.C. 364, 367, 434 S.E.2d 259, 261 (1993); *Loftis v. South Carolina Elec. & Gas*, 361 S.C. 434, 604 S.E.2d 714, 716 (Ct.App.2004). The source of the referee's understandable confusion on this matter was discussed and resolved in this court's case of *Revis v. Barrett*, 321 S.C. 206, 209 n. 1, 467 S.E.2d 460, 462 n. 1 (Ct.App.1996). To establish an easement by prescription, one need only establish either a justifiable claim of right *or* adverse and hostile use. *Id.*

In the present case, there is an abundance of testimony in the record reflecting Jones and her predecessor's claim of right to the easement. Jones testified she believed she had a right to use the access because her family had used it to get to and from the parcel for "as long as she can remember." All three of her uncles testified they openly asserted their perceived right to use the pre-existing path with the full knowledge and acquiescence of Union Camp, owner of the Daley parcel for over thirty-five years. We find Jones adequately demonstrated a substantial belief that she had the right to use the property in a manner consistent with the alleged easement, originating from her family's prior use of the access. *See Loftis*, 361 S.C. at 439–40, 604 S.E.2d at 717; *Hartley*, 355 S.C. at 151, 584 S.E.2d at 389 ("[I]n order for a party to earn a prescriptive easement under claim of right he must demonstrate a substantial belief that he had the right to use the parcel or road based upon the totality of circumstances surrounding his use."); *Revis*, 321 S.C. at 209–210, 467 S.E.2d at

462 (finding a prescriptive easement flowed from a party's claim of right when she was justifiably under the impression she had a right to use the road). Considering only the undisputed facts presented to the special referee, Jones satisfied the third element of establishing a prescriptive easement.

■ Similarly, the referee erred in basing his decision so largely on the fact that, because the Daley Parcel owners also used the trail as a firebreak, Jones's use was not exclusive. As reflected in the enumerated elements above, there is no requirement of exclusivity of use to establish a prescriptive easement. An easement is the legal assertion that one has a valid right to share in the use of another's property for a specific purpose. *See* 25 Am.Jur.2d *Easements and Licenses* § 1 (1996). By the very nature of easements, requiring that one's use be truly exclusive to establish a prescriptive easement would essentially render it impossible to establish. Accordingly, even when our courts have applied a requirement of exclusivity, it has been interpreted narrowly as merely the requirement that one's claim be asserted independently of other users. *See Nelums,* 304 S.C. at 308, 403 S.E.2d at 682. Again, the referee's confusion on this matter is understandable considering the language employed by this court in the second section of *Nelums* and the subtle, yet crucial, differences between establishing a prescriptive easement and establishing ownership through adverse possession.

## II. Continued and Uninterrupted Use

As stated in the previous section, the primary foundation of the referee's decision was an erroneous application of South Carolina law. The referee continued, however, to state that Jones's use "does not appear to have been continuous and uninterrupted." It is undisputed that since Union Camp's acquiescence to the Washingtons' use, no overt actions were taken by the owners of the Daley Parcel to prevent use of the right of way prior to the actions that gave rise to this action. Jones's use, therefore, has satisfied the "uninterrupted" requirement. We are left, however, with the vague finding that the use of Jones and her predecessors "does not appear to have been ... continued." The referee's firm decision to deny the easement's establishment on the ground of exclusivity left this element largely unexplored.

■ As the special referee is the ultimate finder of fact in this action, we remand the case for more specific findings on the issue of continued use. We note, however, that under long established principles of South Carolina law, once a right of way by prescription has been established by twenty years of continuous use, a later diminishment in the frequency of that use does not necessarily nullify the established right by prescription. *Cuthbert v. Lawton*, 3 McCord 194, 14 S.C.L. 194 (Ct.App.1825). Furthermore, in order to satisfy the continual use requirement, the use must only be of a reasonable frequency as determined from the nature and needs of the claimant. *See* 25 Am.Jur.2d *Easements and Licenses* § 68 (1996) ("[The element of continued use] does not require the use thereof every day for the statutory period or even on a weekly or monthly basis; but simply the exercise of the right more or less frequently according to the nature of the use and the needs of the claimant.").

For the foregoing reasons, the special referee's decision is **REVERSED AND REMANDED.**

HEARN, C.J., and GOOLSBY, J., concur.