# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Roosevelt Simmons, Petitioner,

v.

Berkeley Electric Cooperative, Inc. and St. John's Water Company, Inc., Respondents.

Appellate Case No. 2013-001477

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

---

Opinion No. 27674
Heard October 20, 2015 – Filed November 2, 2016

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Edward A. Bertele, of Charleston, for Petitioner.

John B. Williams and J. Jay Hulst, both of Williams & Hulst, L.L.C., of Moncks Corner; Gaines W. Smith and Jeffrey C. Moore, both of Legare, Hare & Smith, of Charleston, all for Respondents.

---

**ACTING CHIEF JUSTICE BEATTY:** In this property dispute concerning utility easements, we granted Roosevelt Simmons' petition for a writ of

certiorari to review the Court of Appeals' decision in *Simmons v. Berkeley Electric Cooperative*, 404 S.C. 172, 744 S.E.2d 580 (Ct. App. 2013). Simmons asserts the Court of Appeals erred in affirming the master-in-equity's grant of summary judgment in favor of St. John's Water Company, Inc. ("St. John's Water") on the basis that it had established a prescriptive easement. Simmons further asserts the Court of Appeals erred in affirming the master's grant of summary judgment in favor of Berkeley Electric Cooperative, Inc. ("Berkeley Electric") on the grounds that it had been granted an express easement and that it had established a prescriptive easement to maintain the power lines in their current configuration. We affirm in part, reverse in part, and remand.

## I.    Factual/Procedural History

In 2003, Simmons acquired title to two parcels of land, TMS # 283-00-00-498 ("Tract 498") and TMS # 282-00-00-135 ("Tract 135"). Both parcels are undeveloped, wooded, and located along Kitford Road on Johns Island. The parcels are separated by an abandoned railroad right-of-way and were previously part of a larger tract owned by two of Simmons' predecessors-in-title, Edward Heyward and E.C. Brown. In 1956, Heyward granted an easement to Berkeley Electric to construct and maintain transmission lines over what is now Tract 498 and Tract 135. In 1972, Brown granted an easement to Berkeley Electric to construct and maintain distribution lines over Tract 498.

In 1977, Charleston County issued an encroachment permit authorizing St. John's Water to install a water main along Kitford Road pursuant to an accompanying map that illustrated the water main's approved location. St. John's Water finished construction on the water main in 1978. In 2005, Simmons discovered a water meter under bushes on Tract 135. Simmons subsequently contacted St. John's Water, which informed Simmons that it would not move the water main because it believed it had an easement giving it the right to use the property. St. John's Water based its belief on the encroachment permit and its understanding that the water main had been in its current location for more than twenty years. Pursuant to a request by Simmons, St. John's Water "blue-flagged" the property. The blue flags showed the water main crossing both Tract 135 and Tract 498.[1]

---

[1] The blue flags also showed the water main was not located along Kitford Road, but north of Kitford Road across Simmons' property.

In 2008, Simmons commenced this action against Berkeley Electric and St. John's Water alleging trespass and unjust enrichment. Specifically, Simmons alleged Berkeley Electric and St. John's Water trespassed on his property by constructing, placing, and maintaining unauthorized power and water lines. In doing so, Simmons claimed Berkeley Electric and St. John's Water had been "furnished with a non-gratuitous and valuable benefit without paying for its reasonable value." Simmons also sought a declaration that neither utility company had property interests or rights to his property.

Both Berkeley Electric and St. John's Water moved for summary judgment. After presiding over the summary judgment hearings, the master granted both motions for summary judgment. With respect to Berkeley Electric, the master determined any transmission and distribution lines over Simmons' property were permitted under the 1956 and 1972 easements. To the extent the lines were not within the scope of the express easements, the master found Berkeley Electric established a prescriptive easement to the lines in their current configuration. As to St. John's Water, the master determined the encroachment permit served as an express easement granting St. John's Water the right to use Simmons' property to construct the water main. To the extent that the water main was not covered under the express easement, the master held St. John's Water established a prescriptive easement to maintain the water main in its current configuration. Simmons appealed.

The Court of Appeals affirmed the master's grant of summary judgment in favor of Berkeley Electric, finding Berkeley Electric did not exceed the scope of the express easements. *Simmons*, 404 S.C. at 179-80, 744 S.E.2d at 584-85. In addition, the Court of Appeals affirmed the master's finding that Berkeley Electric established a prescriptive easement for the power lines in their current configuration. *Id*. at 181-82, 744 S.E.2d at 585-86. As to St. John's Water, the Court of Appeals affirmed the master's grant of summary judgment in favor of St. John's Water on the basis that it established a prescriptive easement, but reversed the master's finding that it had an express easement after determining Charleston County lacked the authority to grant a right to use property owned by another. *Id*. at 183-85, 744 S.E.2d at 586-87. The Court of Appeals remanded the action to the master for a determination of whether there are additional water lines under Simmons' property. *Id*. at 185, 744 S.E.2d at 587. We granted Simmons' petition for a writ of certiorari following the Court of Appeals' denial of his petition for rehearing.

## II.    Standard of Review

When reviewing the grant of a summary judgment motion, this Court applies the same standard that governs the trial court under Rule 56(c), SCRCP, which provides that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002); Rule 56(c), SCRCP.  "When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Fleming*, 350 S.C. at 493-94, 567 S.E.2d at 860.

## III.    Discussion

### A. St. John's Water

Simmons asserts the Court of Appeals erred in affirming the master's grant of summary judgment in favor of St. John's Water.  We agree.

"An easement is a right given to a person to use the land of another for a specific purpose."  *Bundy v. Shirley*, 412 S.C. 292, 304, 772 S.E.2d 163, 169 (2015).  "A prescriptive easement is not implied by law but is established by the conduct of the dominant tenement owner."  *Boyd v. BellSouth Tel. Tel. Co.*, 369 S.C. 410, 419, 633 S.E.2d 136, 141 (2006).  To establish a prescriptive easement, the claimant must prove by clear and convincing evidence:  "(1) the continued and uninterrupted use or enjoyment of the right for a period of 20 years; (2) the identity of the thing enjoyed; and (3) the use [was] adverse under claim of right."  *Darlington Cnty. v. Perkins*, 269 S.C. 572, 576, 239 S.E.2d 69, 71 (1977).  "[W]hen it appears that claimant has enjoyed an easement openly, notoriously, continuously, and uninterruptedly, in derogation of another's rights, for the full period of 20 years, the use will be presumed to have been adverse."  *Williamson v. Abbott*, 107 S.C. 397, 400, 93 S.E. 15, 16 (1917).  "[A] party claiming a prescriptive easement has the burden of proving all elements by clear and convincing evidence."  *Bundy*, 412 S.C. at 306, 772 S.E.2d at 170.

In *Horry County v. Laychur*, this Court articulated the third element of a prescriptive easement as requiring the claimant's use to be "adverse or under a claim of right."  315 S.C. 364, 367, 434 S.E.2d 259, 261 (1993).  In relying on this language, the Court of Appeals has recognized two methods of proving the third element:  one established through "adverse use" and one through a "claim of

right."[2]  According to the Court of Appeals, "[t]o establish an easement by prescription, one need only establish *either* a justifiable claim of right *or* adverse and hostile use." *Jones v. Daley*, 363 S.C. 310, 316, 609 S.E.2d 597, 600 (Ct. App. 2005) (emphasis added).  Therefore, if a claimant cannot prove the elements of adverse use, then, under the Court of Appeals' approach, the claimant could establish a prescriptive easement under a claim of right.  "[I]n order for a party to earn a prescriptive easement under claim of right he must demonstrate a substantial belief that he had the right to **use** the [property] based upon the totality of circumstances surrounding his use." *Hartley v. John Wesley United Methodist Church of Johns Island*, 355 S.C. 145, 151, 584 S.E.2d 386, 389 (Ct. App. 2003).

Here, the Court of Appeals determined "St. John's Water established the water main was installed under a claim of right." *Simmons*, 404 S.C. at 184, 744 S.E.2d at 587.  To support its determination, the Court of Appeals relied on an affidavit of Hugh S. Miley, an engineer involved in the design, permitting, and construction of the water main.  *Id.*  In his affidavit, Miley attested that: Charleston County issued an encroachment permit for the water main; construction on the water main began in 1977 and was completed in 1978; and that, to the best of his knowledge, the water main has been used continuously and uninterruptedly for more than twenty years.  The Court of Appeals found "Miley's affidavit demonstrates his belief that the encroachment permits obtained from Charleston County covered the installation of the water main as illustrated on the map."  *Id.* The Court of Appeals continued, stating "[t]he fact the claim may have been based on a mistake does not negate the claim of right required to establish a prescriptive easement."  *Id.*

As a threshold matter, we hold the Court of Appeals erred in recognizing two methods of proving the third element of a prescriptive easement.  We acknowledge that this Court's decisions have helped give rise to this error and now take this opportunity to clarify the third element of a prescriptive easement.

While this Court has recently articulated the third element of a prescriptive easement as requiring the claimant's use be "adverse or under a claim of right," this

---

[2]  *See*, *e.g.*, *Loftis v. S.C. Elec. & Gas Co.*, 361 S.C. 434, 440-41, 604 S.E.2d 714, 717 (Ct. App. 2004) (finding respondent established a prescriptive easement under claim of right because it believed it had the right to use the property for the power lines); *Revis v. Barrett*, 321 S.C. 206, 210, 467 S.E.2d 460, 462 (Ct. App. 1996) (determining plaintiff established a prescriptive easement to the use of an old road under claim of right based on her belief that she had the right to use the road).

Court has not always articulated the third element this way. In 1823, the Constitutional Court of Appeals of South Carolina determined three things are necessary to establish a right by prescription: (1) use and occupation or enjoyment; (2) the identity of the thing enjoyed; and (3) that it is adverse to the right of some other person. *Lawton v. Rivers*, 13 S.C.L. 445, 451 (2 McCord) (1823). In 1917, this Court relied on *Lawton* and determined: "To establish a right by prescription, it is necessary to prove three things: (1) The continued and uninterrupted use or enjoyment of the right for the full period of 20 years; (2) the identity of the thing enjoyed; (3) that the use or enjoyment was *adverse, or under claim of right*." *Williamson*, 107 S.C. at 400, 93 S.E. at 15-16 (emphasis added). By placing a "comma" after the term "adverse," this Court intended to modify the term "adverse," not create another method to establish a claim.[3] Accordingly, the third element of a prescriptive easement should be interpreted as requiring the claimant's use be adverse or, in other words, under a claim of right contrary to the rights of the true property owner. A brief review of additional authority on this issue is instructive.

---

[3] *Williamson* is not the only case in which this comma appears after the term "adverse." For example, in *Brasington v. Williams*, 143 S.C. 223, 261, 141 S.E. 375, 387 (1927) (Watts, C.J., dissenting), *Poole v. Edwards*, 197 S.C. 280, 283, 15 S.E.2d 349, 350 (1941), and *Sanitary & Aseptic Package Co. v. Shealy*, 205 S.C. 198, 203, 31 S.E.2d 253, 255 (1944), this Court cited the *Williamson* test, with the comma, verbatim. Approximately eight months before *Sanitary*, however, this Court cited the *Williamson* test, but, for the first time, without the comma behind the term "adverse." *See Steele v. Williams*, 204 S.C. 124, 133, 28 S.E.2d 644, 648 (1944) ("Three things are necessary to establish a right by prescription: . . . (3) that the use or enjoyment was adverse or under claim of right."). The Court offered no explanation for dropping the comma. While the comma reappeared after the term "adverse" in *Sanitary* eight months after *Steele*, it is around this time when this Court moved away from articulating the third element with a comma following the term "adverse." *See, e.g.*, *Babb v. Harrison*, 220 S.C. 20, 24-25, 66 S.E.2d 457, 458 (1951) ("It has long been recognized that the requirements necessary to establishing a right by prescription are: . . . (3) that the use or enjoyment was adverse or under claim of right." (citing *Lawton*, *Williamson*, *Poole*, *Steele*, and *Sanitary & Aseptic Package Co.*)). Because this Court offered no explanation for dropping the comma, and because, in later cases, this Court relies on decisions in which the comma appears, we believe the failure to cite the third element with the comma behind "adverse" was unintentional.

First, the terms "adverse use" and "claim of right" are, in effect, quite similar. For example, Black's Law Dictionary defines "adverse use" as "a use without license or permission." *Black's Law Dictionary* 1681 (9th ed. 2009). "Claim of right" is defined as: (1) The possession of a piece of property with the intention of claiming it in hostility to the true owner; or (2) A party's manifest intention to take over land, regardless of title or right. *Black's Law Dictionary* 283 (9th ed. 2009). *American Jurisprudence* also recognizes that "[u]nder the law of prescriptive easements, the essence of a 'hostile' use, which has been referred to interchangeably in the case law as 'adverse,' 'hostile,' 'nonpermissive,' or 'under a claim of right,' is a lack of permission from the true owner." 68 Am. Jur. *Proof of Facts* 3d 239 § 15, at 287 (2002). *American Jurisprudence* further states: "Many courts have phrased the issue of adverse use in terms of a claim of right. Although some have phrased the elements of prescription to include both adverse or hostile use and a claim of right, in practice, proof of adverse use and of a claim of right merge." 2 Am. Jur. *Proof of Facts* 3d 125 § 5, at 144 (1988).

Secondly, it "is well-established that evidence of permissive use defeats the establishment of a prescriptive easement because use that is permissive cannot also be adverse." *Bundy*, 412 S.C. at 310, 772 S.E.2d at 173; *see* 2 Am. Jur. *Proof of Facts* 3d 197 § 6, at 218 (1988) ("Any use of property which is not hostile or adverse to the interests or title of the property owner cannot ripen into a prescriptive right."). Therefore, to the extent that there is a difference between the two terms, there still could not be a legitimate claim of right without adverse use.

Accordingly, we hold adverse use and claim of right cannot exist as separate methods of proving the third element of a prescriptive easement as the two terms are, in effect, one and the same. Thus, we overrule those decisions that express a contrary conclusion of law. We also take the opportunity to emphasize that a claimant's belief regarding the permissiveness of his use of property is irrelevant when determining the existence of a prescriptive easement. Instead, courts in this state should only determine whether the claimant's use was indeed adverse.

In sum, we conclude that when analyzing the third element of a prescriptive easement, courts in this state should apply the test for adverse use. *See Williamson*, 107 S.C. at 400, 93 S.E. at 16 ("[W]hen it appears that claimant has enjoyed an easement openly, notoriously, continuously, and uninterruptedly, in derogation of another's rights, for the full period of 20 years, the use will be presumed to have been adverse."). However, because the "continuous" and "uninterrupted" elements for adverse use are already required to establish a prescriptive easement, the subtest for "adverse use" only further requires the

claimant's use be "open" and "notorious." Thus, we believe the test for a prescriptive easement can be simplified as follows:

> In order to establish a prescriptive easement, the claimant must identify the thing enjoyed, and show his use has been open, notorious, continuous, uninterrupted, and contrary to the true property owner's rights for a period of twenty years.

Applying this test to the case at hand, as will be discussed, we find there is a genuine issue of material fact as to whether St. John's Water can prove the "open" and "notorious" elements of a prescriptive easement; therefore, we conclude the Court of Appeals erred in affirming the master's grant of summary judgment in favor of St. John's Water.

## 1. Open

"'Open' generally means that the use is not made in secret or stealthily. It may also mean that it is visible or apparent." Restatement (Third) of Property (Servitudes) § 2.17(h) (2000). Here, the water main is located underground. Both Tract 498 and Tract 135 are heavily wooded and undeveloped. According to Simmons, the water meter was hidden under bushes when he first discovered it. The water main also had not been "blue-flagged" at that time. Considering these conditions, we find there is a genuine issue of material fact as to whether St. John's Water's use was open. While this finding is sufficient to warrant a reversal of the Court of Appeals' decision to uphold the master's grant of summary judgment in favor of St. John's Water, we proceed to address the "notorious" element of a prescriptive easement for the benefit of the parties on remand.

## 2. Notorious

"'Notorious' generally means that the use is actually known to the owner, or is widely known in the neighborhood." Restatement (Third) of Property (Servitudes) § 2.17(h) (2000). Simmons claims he was unaware of the water main because he lived on another parcel located further up Kitford Road, which used well water. Nevertheless, the master determined that because a majority of the area's residents are getting their water out of a spigot, the fact that there is a water main being used to supply the water is widely known, or "notorious." We disagree with this determination because Simmons' water also came from a spigot, but was supplied by a water well. Further, even if it is widely known that a majority of the neighborhood's water comes from a water main that does not necessarily mean the

location of the water main is widely known. Or, in other words, it does not necessarily mean it is widely known that St. John's Water is using Simmons' property for the use of the water main.

Consequently, we hold there is a genuine issue of material fact as to whether St. John's Water has established each element of a prescriptive easement by clear and convincing evidence.[4] Thus, we reverse the portion of the Court of Appeals' decision affirming the master's grant of summary judgment in favor of St. John's Water and remand this matter for additional proceedings consistent with the test for a prescriptive easement as articulated in this opinion.

_____

[4] Our holding is consistent with other jurisdictions that have considered this issue. As articulated in American Law Reports:

> Where the pipes or other conduits as to which easements have been claimed were buried underground and their presence was not physically apparent throughout the prescriptive period, the courts have generally concluded that there was insufficient notoriety of the user to permit prescription to run against the servient estate. This result has often been reached where there was an absence of substantial evidence that the servient parties had any notice or information of the existence of the facility and its user.

J. H. Crabb, Annotation, *Easement by prescription in artificial drains, pipes, or sewers*, 55 A.L.R.2d 1144, 1167 (1957 & Supp. 2015); *see City of Montgomery v. Couturier*, 373 So. 2d 625, 628 (Ala. 1979) (affirming the trial court's finding that the City of Montgomery did not establish a prescriptive easement to an underground pipe because the pipe was hidden under a large hedgerow and because water flowed through the pipe only during heavy rains); *Holman v. Richardson*, 76 So. 136, 138 (Miss. 1917) (holding a prescriptive easement was not established over underground drain tiles since they were unknown to the property owner until three years prior to the start of the litigation and their existence was not open and notorious); *Maricle v. Hines,* 247 S.W.2d 611, 613 (Tex. Civ. App. 1952) (determining claimant did not establish a prescriptive easement to the use of an underground sewer line because he failed to prove his use was "open, notorious and adverse").

## B. Berkeley Electric

### 1. Express Easements

Simmons next contends the Court of Appeals erred in determining Berkeley Electric did not exceed the scope of the express easements. To support his contention, Simmons relies on language from this Court's opinion in *Hill v. Carolina Power & Light Co.*, 204 S.C. 83, 28 S.E.2d 545 (1943). In *Hill*, we stated, "a grant or reservation of an easement in general terms is limited to a use which is reasonably necessary and convenient and as little burdensome to the servient estate as possible for the use contemplated." *Hill*, 204 S.C. at 96, 28 S.E.2d at 549. While Simmons recognizes that the 1972 easement permits Berkeley Electric to maintain distribution lines over Tract 498, Simmons asserts Berkeley Electric exceeded the scope of the easement by unreasonably extending distribution lines over a portion of Tract 498. Specifically, Simmons argues Berkeley Electric could have placed its distribution lines in a way that would have been less burdensome to the use and enjoyment of his property. We decline to reach the merits of this argument. Because Simmons failed to raise this issue in his petition for rehearing before the Court of Appeals, we find it unpreserved for our review. *See Sloan v. S.C. Dep't of Transp.*, 365 S.C. 299, 307-08, 618 S.E.2d 876, 880 (2005) (providing that in order for an issue to be preserved for the Supreme Court's review, the issue must have been raised in a petition for rehearing before the Court of Appeals).

### 2. Prescriptive Easement

Finally, Simmons asserts the Court of Appeals erred in affirming the master's grant of summary judgment in favor of Berkeley Electric because Berkeley Electric failed to prove each element of a prescriptive easement by clear and convincing evidence. In addition, Simmons argues he presented more than a scintilla of evidence to survive Berkeley Electric's summary judgment motion. Simmons believes that, in finding otherwise, the Court of Appeals improperly weighed the evidence instead of deciding whether there was a material dispute of fact. We disagree.

"[T]he determination of the existence of an easement is a question of fact in a law action." *Jowers v. Hornsby*, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987). This Court reviews the trier of fact's determination of whether an easement exists as an action at law. *Id.* Therefore, our scope of review is limited to the correction of errors of law, and we will not disturb the master's factual findings that have

some evidentiary support. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 87, 221 S.E.2d 773, 776 (1976).

Simmons contends, and Berkeley Electric agrees, that Berkeley Electric must show that any distribution lines crossing Tract 135 are covered under a prescriptive easement since neither the 1956 easement nor the 1972 easement grants Berkeley Electric the right to run distribution lines over Tract 135. To support Berkeley Electric's position that any distribution lines crossing Tract 135 were acquired under a prescriptive easement, Berkeley Electric submitted affidavits from Thomas Seeney and Richard Frank, one current and one former supervisor over Berkeley Electric's operations in the Johns Island District. Both Seeney and Frank worked for Berkeley Electric since the late 1970's. Both stated: they were familiar with the age, configuration, and characteristics of the distribution line located at 3507 Kitford Road; the line is clearly visible from Kitford Road; to the best of their recollections, the line had never been moved; the power poles for the line have birthmarks of 1984 and 1986; and that they believed the line has been in its current configuration since at least 1980. Based on this testimony, both the master and Court of Appeals determined Berkeley Electric established a prescriptive easement to the distribution line in its current configuration.

We decline to overrule the portion of the Court of Appeals' decision affirming the master's grant of summary judgment on this issue. Both Seeney and Frank were able to identify the power line, both attested the line had been in its current location for at least twenty years without interruption, and that the line was visible from Kitford Road. Thus, we conclude Berkeley Electric has presented evidence to prove each element of a prescriptive easement.

Simmons contends he presented enough evidence to contradict the two affidavits and survive Berkeley Electric's motion for summary judgment. To support his contention, Simmons relies on two plats, two system maps, and an affidavit. The plats Simmons relies on are of neighboring properties. A portion of Simmons' property, however, is illustrated on the plats. That portion does not show all of the power lines Simmons contends run across his property. According to Simmons, this discrepancy is enough to create a material dispute of fact. Viewing the evidence in a light most favorable to Simmons, we disagree. As discussed, the plats were not created to show Simmons' property, nor do they purport to illustrate all of the power lines encumbering the area. Thus, we find these plats do not create a dispute of material fact.

Simmons next relies on two system maps Berkeley Electric produced during discovery. According to Simmons, these maps show the distribution line in two different locations which creates a dispute of material fact as to whether the distribution line has been in the same location for over twenty years. We disagree. The system maps are not drawn to scale, nor do they identify any property lines. Without additional testimony as to what these maps depict, we find these maps do not create a dispute of material fact.

Finally, Simmons relies on his affidavit, which he contends contradicts Frank's and Seeney's affidavits by stating he had personal knowledge the distribution line was not in the same location in 1980. While Simmons did attest that he had personal knowledge the distribution line in question has not been in its current location for over twenty years, in support of that statement he references and relies on one of the plats discussed above. He does not state how he personally was aware of the power line's location over the years. Therefore, we conclude Simmons has not presented evidence which gives rise to a dispute of material fact.

Consequently, we hold the Court of Appeals properly affirmed the master's grant of summary judgment in favor of Berkeley Electric.

## IV.    Conclusion

In conclusion, we affirm the portion of the Court of Appeals' decision that upheld the master's grant of summary judgment in favor of Berkeley Electric. We reverse the portion of the Court of Appeals' decision that upheld the master's grant of summary judgment in favor of St. John's Water and remand for additional proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**KITTREDGE and HEARN, JJ., concur.  Acting Justices Jean H. Toal and James E. Moore, concur.**